**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **MILLON R. CLEMENTS,** | |
| Plaintiff, | |
| v. | Civil Action No. 5:11-CV-322 (HL) |
| **NORFOLK  SOUTHERN  RAILWAY COMPANY**, | |
| Defendant. | |

## ORDER

This case is before the Court on Defendant Norfolk Southern Railway Company's Motion for Summary Judgment (Doc. 14). For the reasons discussed herein, the motion is denied.

## I.  FACTS

Plaintiff began working for Defendant in 1975. He started out as a laborer and moved through the ranks to become a truck driver. On May 20, 2010, Plaintiff was operating a material truck as part of his employment. He started his work day at the Davisboro yard. Plaintiff and his supervisor, Mr. Palmer, had a safety briefing over the telephone, where Plaintiff was advised to be careful and protect himself while out on the track.

Plaintiff was assigned the task of moving 115 pound tie plates and other scrap material from the Davisboro yard to the Millen yard. Plaintiff was working

by himself on the material truck. He used a magnetized boom lift to pick up the plates and other material and put them in the back of his truck.

After loading the material, Plaintiff drove to the Millen yard, where he was to drop off the tie plates and scrap material and pick up some anchors to take back to Davisboro. After he arrived at the Millen yard, Plaintiff noticed that the air conditioner in the truck "wasn't putting out like it's supposed to." (Deposition of Millon R. Clements, p. 72). Plaintiff had worked the three previous days in a kaolin mine, where he was moving material around for track work. Plaintiff attributed the air conditioning problem his previous work in the kaolin mine. ("And I knowed I'd been in the clay, working in that clay mine." (Clements dep., p 72)). So he decided to clean out the truck's air filters.

The material truck has three air filters, one large filter with a smaller filter inside of it and a second small filter near the dashboard. Plaintiff had replaced and cleaned the air filters in the past, but had never received any training on how to clean the filters.[1] However, he had seen other people clean them, either by blowing them out with an air hose or by beating them on the truck tire to knock the dust out. Plaintiff decided to beat the filters on his truck tire.

---

[1] Plaintiff's testimony as to whether or not he had ever cleaned out the filters changes throughout his deposition. Reviewing the evidence in the light most favorable to Plaintiff, the Court finds for purposes of this motion that Plaintiff had cleaned the filters on other occasions. The inconsistencies will be for the jury to weigh.

All three filters are located under the hood of the truck. Plaintiff cleaned the big filter first. He then cleaned one of the small filters. The filters were covered in kaolin. In order to get to the smaller filter, Plaintiff had to climb up on the passenger's side front tire. He stepped either on the bottom of the rim or the lug nuts at the bottom of the rim and then stepped on top of the tire. When climbing on top of the tire, Plaintiff had "a little help from that there bar up there I was pulling on, not too much pressure." (Clements dep., p. 87).

After Plaintiff finished cleaning the smaller filter, he stepped down off the tire. He "went lower" than he normally goes and felt pain in his back. (Clements dep., p. 92). He could not recall if he stepped directly to the ground from the top of the tire, or whether he stepped down onto the rim first. After his back began hurting, Plaintiff had to step back up on the tire and replace the filter and then step back down.[2]

Plaintiff admits that the air conditioner did not stop working completely. ("I didn't say it stopped working. It wasn't putting out air like I know it's supposed to put out." (Clements dep., p. 78)). While part of his reasoning behind cleaning the filters was to make the drive back to Davisboro and then home more comfortable, it was also a maintenance issue. "I figured it'd help the truck breathe more and

---

[2] There is a contradiction in the deposition testimony as to how many times Plaintiff climbed on and off the tire. At one point he says he did it three times, once for each filter. In another section, he testified that he did not have to climb onto the tire to reach the larger filter. This is another credibility issue for the jury.

make me feel better while I was going to drive it." (Clements dep., p. 80). He testified that he decided to clean out the filters to "[m]aintain the - - yeah, to help me and the truck out." (Clements dep., p. 81). A mechanic typically performed standard maintenance work on the truck, but Plaintiff was also responsible for keeping the truck maintained. According to Plaintiff, "[w]ell, if you operating a truck like that there, you're responsible for keeping it maintained. And little simple, small things, you don't want to carry it to a mechanic to do every little thing. Some things you can do yourself." (Clements dep., p. 80). Further, "when maintenance on your vehicle need done, if you're responsible for that truck, you have to do what you can to keep that truck running." (Clements dep., p. 97).

Plaintiff had never previously complained to any supervisor about kaolin dust accumulation or the air conditioner not blowing cold air. He admits he was not required by Defendant to clean out the filters on the day at issue.

Plaintiff ultimately had to have surgery on his back. In August of 2011, Plaintiff filed a lawsuit against Defendant pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.* [3] Plaintiff alleges that his back injury was caused by the negligence of Defendant. Plaintiff specifically contends that he was not provided with the proper equipment necessary to safely perform his job; that the walking surface in the yard where the incident occurred was in poor

---

[3] Plaintiff was terminated from the railroad for failing to report the injury, which was a violation of a company rule. Plaintiff's termination is not at issue in this case.

condition; and that he was not properly or sufficiently trained to safely change the air filters in his truck.

When asked during his deposition how he believed Defendant was negligent, Plaintiff stated:

> A:   Well, I would say possibly - - well, you couldn't put a handle there to help you hold on. Possibly if you had a ladder, which you'll have to get off the back of the truck to get around there to get high enough to keep from climbing up and down on your tire.
>
> Q:   Did you have a ladder on the material truck?
>
> A:   No, sir.
>
> Q:   So one thing you think they could've done was have a ladder available, and then you could've climbed up the ladder as opposed to standing on the tire?
>
> A:   Well, it'd been high enough.

(Clements dep., p. 96).

Plaintiff also stated that the area where he was parked and where he stepped down to the ground was not level or made up of one single substance. That particular area of the yard consisted of dirt, rocks, and ballast.[4] ("It's on -- it was on ballast. Well, it probably was dirt once, but it's a spot out there where,

---

[4] Ballast is the stone or other material placed underneath and around railroad tracks to provide drainage, erosion protection, and structural support. Nickels v. Grand Trunk W. R.R., Inc., 560 F.3d 426 (6th Cir. 2009).

you know, when you spread it out, try to get the water hose out, and then there'll be rocks and ballast, trying to get it packed to keep the water from running off." (Clements dep., p. 77)). He testified that he "maybe" had "bad footing" when he stepped down, and it was possible he stepped on something that could have contributed to his injury. (Clements dep., p. 101).

Defendant has now moved for summary judgment, and argues that Plaintiff cannot establish foreseeability or causation, both of which are required to recover under FELA.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings

and present affirmative evidence to show that a genuine issue of material fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257, 106 S.Ct. 2505 (1986).

The applicable substantive law identifies which facts are material. <u>Id.</u> at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. <u>Id.</u> An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Id.</u> at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Patton v. Trial Guar. Ins. Corp.</u>, 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986))."If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (internal citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Id. at 255.

In a FELA case, a plaintiff is required "to present more than a scintilla of evidence in order to create a jury question on the issue of employer liability, but not much more." Aparicio v. Norfolk & W. Ry. Co., 84 F.3d 803, 810 (6th Cir. 1996) (abrogated on other grounds). The court must also keep in mind that to "'deprive [railroad] workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them.'" Phillips v. Chesapeake & Ohio Ry. Co., 475 F.2d 22, 24 (4th Cir. 1973) (quoting Bailey v. Cent. Vermont Ry., 319 U.S. 350, 354, 63 S.Ct. 1062 (1943)).

## III.   ANALYSIS

"Railroads have a duty to furnish employees with a 'reasonably safe place in which to work and such protection [against the hazard causing the injury] as would be expected of a person in the exercise of ordinary care under those circumstances.'" Aparicio, 84 F.3d at 810 (quoting Urie v. Thompson, 337 U.S. 163, 179 n.16, 69 S.Ct. 1018 (1949)); see also Brown v. CSX Transp., 18 F.3d 245, 249 (4th Cir. 1994) (stating that a railroad has a "non-delegable duty to provide [employees] with a safe place to work") (citation omitted)). FELA imposes liability on railroads for injuries to their employees. The relevant statutory provision states:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engine, machinery, track, roadbed, works, boats, wharves or other equipment.

45 U.S.C. § 51.

To establish a claim under FELA, a plaintiff must show: "(1) an injury occurred while the plaintiff was working within the scope of his employment with the railroad; (2) the employment was in the furtherance of the railroad's interstate transportation business; (3) the employer railroad was negligent; and (4) the employer's negligence played some part in causing the injury for which compensation is sought under the Act." Aparicio, 84 F.3d at 810. A FELA plaintiff "must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." Kelson v. Central of Ga. R. Co., 234 Ga. App. 200, 203, 505 S.E.2d 803 (1998) (quotation, citations, and punctuation omitted). The dispute in this case is over foreseeability and causation.[5]

As to foreseeability,

> [w]hile a railroad has a duty to use ordinary care to protect employees from known dangers, Urie v. Thompson also established that a railroad breaches its duty to its employees by failing to provide a safe

---

[5] There is no disagreement that Plaintiff was working within the scope of his employment or that the employment was in furtherance of Defendant's interstate transportation business.

> working environment if it knew or should have known that it was not acting adequately to protect its employees. "[W]e think that negligence, within the meaning of the Federal Employers' Liability Act, attach[es] if the [employer] 'knew, or by the exercise of due care should have known,' that prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees."

Aparicio, 84 F.3d at 811 (quoting Urie, 337 U.S. at 178). "The jury, therefore, must be asked, initially: Did the carrier 'fai[l] to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances[?]'" CSX Transp., Inc. v. McBride, --- U.S. ---, 131 S.Ct. 2630, 2643 (2011) (quoting Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 118, 83 S.Ct. 659 (1963)). "In that regard, the jury may be told that '[the railroad's] duties are measured by what is reasonably foreseeable under the circumstances.'" Id. (internal quotation marks omitted). "Thus, if a person has no reasonable ground to anticipate that a particular condition . . . would or might result in a mishap or injury, then the party is not required to do anything to correct the condition." Id.

As for causation, FELA cases are not governed by the standard common law rules of proximate causation found in other negligence cases. Instead:

> Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest*, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the results to other causes,

> including the employee's contributory negligence.
> Judicial appraisal of the proofs to determine whether a
> jury question is presented is narrowly limited to the
> single inquiry whether, with reason, the conclusion may
> be drawn that negligence of the employer played *any*
> part at all in the injury or death.

Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 505-06, 77 S.Ct. 443 (1957)

(footnotes omitted; emphasis added). The Supreme Court reaffirmed this relaxed

standard in McBride, 131 S.Ct. at 2630, which was decided in 2011.

As noted above, Defendant contends that Plaintiff cannot meet two prongs

of the FELA test: foreseeability and causation. The Court will address each in

turn.

### A.    Foreseeability

"[T]he employer's duty under FELA to maintain a safe workplace turns in a

general sense on the reasonable foreseeability of harm." Peyton v. St. Louis SW

Ry. Co., 962 F.2d 832, 833 (8th Cir. 1992) (citation omitted). To establish

foreseeability, the employee must show that the employer possessed actual or

constructive notice of the unsafe condition. "[N]otice under . . . FELA may be

shown from facts permitting a jury to infer that the defect could have been

discovered by the exercise of reasonable care or inspection[.]" Szekeres v. CSX

Transp., Inc., 617 F.3d 424, 430-31 (6th Cir. 2010).

Defendant argues that it had no actual or constructive notice of any alleged

defective condition, as Plaintiff never told anyone about a problem with the air

conditioner. Defendant contends it could not have reasonably foreseen that Plaintiff would climb on a tire to clean out the air filter when Plaintiff was not assigned that task and it had no knowledge of any problem with the air conditioner.

In the Court's opinion, Defendant is interpreting the concept of foreseeability too narrowly. "Foreseeability does not require the employer to have anticipated the plaintiff's injury in the precise manner in which it occurred. It is sufficient if the employer could reasonably foresee that *an* injury might occur. In a close case, the FELA action should be allowed to proceed to trial." CSX Transp., Inc. v. Miller, 159 Md. App. 123, 221, 858 A.2d 1025 (2003) (quoting Elston v. Union Pac. R.R. Co., 74 P.3d 478, 482 (Colo. App. 2003) (emphasis in original)). Plaintiff's testimony establishes that he was responsible for performing some maintenance on his truck. The scope of that duty is not clear from the record. However, Plaintiff testified that his decision to clean the filters was based at least in part on the fact that he is responsible for maintaining the truck. The question is not whether Defendant could have foreseen Plaintiff injuring himself climbing down off the tire after cleaning the filter. The question is whether Defendant

reasonably could or should have foreseen any injury in connection with Plaintiff performing maintenance on the truck.[6]

A defendant "has a duty to act reasonably given not only the existing conditions, but the anticipated ones as well." McDonald v. NE Ill. Reg'l, 249 F.Supp.2d 1051, 1055 (N.D. Ill. 2003). A jury could find that Defendant should have anticipated that Plaintiff would need to reach all points of the truck, including those not reachable from the ground, and that Defendant should have provided certain equipment to Plaintiff so that he could perform his job duties. The Court believes the question of foreseeability is one for the jury.

## B.   Causation

Defendant's second argument on summary judgment is that Plaintiff has not established causation under FELA. Defendant contends that Plaintiff cannot show that Defendant caused him an injury because Plaintiff was the sole cause of his own injury. Defendant asserts that Plaintiff caused his own injury when he "jumped back down off the tire" after cleaning the filters.

Under Rogers and McBride, the question is whether there is a genuine issue of fact that Defendant's negligence "played any part, even the slightest, in producing the injury." Rogers, 352 U.S. at 506; McBride, 131 S.Ct. at 2643. The Rogers Court emphasized that "[i]t does not matter that, from the evidence, the

---

[6] It should be noted as well that "the law does not impose a duty on an employer to address a safety hazard or risk only in the event that a similar injury has occurred before from the same cause." Aparicio, 84 F.3d at 811.

jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence." 352 U.S. at 506.[7] It is well established that an employee's contributory negligence does not bar recovery under FELA. 45 U.S.C. § 53; Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 544, 114 S.Ct. 2396 (1994).

The argument set forth by Defendant is much like the one rejected by the Court of Special Appeals of Maryland in Page v. National Railroad Passenger Corp., 200 Md. App. 463 (2011). There, the plaintiff railroad worker jumped down off a passenger platform onto the ballast adjacent to the track and injured his hip. Amtrak, the plaintiff's employer, argued on appeal that the employee's decision to jump from the platform was the sole cause of his injury. The court noted that while Amtrak asserted that the employee acted unreasonably in dropping down from the platform, "'it can nearly always be said that with greater care the employee could have avoided an accident that occurred under circumstances over which he was likely to have greater control than his master.'" Id. at 488 (quoting Miller, 159 Md. App. at 136). As contributory negligence does not bar a

---

[7] "Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or in part' to its negligence." Rogers, 352 U.S. at 506-07.

FELA action, the court held that "[w]hether Page acted unreasonably in dropping down from the platform instead of using the stairs, and the degree to which Page's fault, if any, contributed to his injuries, are questions for the jury." Id. at 489.

Defendant's argument about Plaintiff jumping down off the tire is nothing more than a contributory negligence argument. It will be for the jury to decide if Plaintiff acted unreasonably and whether Plaintiff contributed to his injuries. If appropriate, the jury can reduce any award given Plaintiff. Viewing the evidence in the light most favorable to Plaintiff and utilizing the relaxed standard of causation applicable to FELA cases, the Court finds that the case must be submitted to a jury.

## IV.  CONCLUSION

In the FELA case of Bailey v. Central Vermont Railway, 319 U.S. 350, 63 S.Ct. 1062 (1943), the Supreme Court stated:

> The right to trial by jury is a basic and fundamental feature of our system of federal jurisprudence. It is part and parcel of the remedy afforded railroad workers under the Employers' Liability Act. Reasonable care and cause and effect are as elusive here as in other fields. But the jury has been chosen as the appropriate tribunal to apply those standards to the facts of these personal injuries. That method of determining the liability of the carriers and of placing on them the cost of these industrial accidents may be crude, archaic, and expensive as compared with the more modern systems of workmen's compensation. But however inefficient

> and backward it may be, it is the system which Congress has provided. To deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them.

Id. at 354 (internal quotation and quotation marks omitted).

This is one of those close cases referred to by the Supreme Court in Bailey. While it is not a certainty that Plaintiff will be successful at trial, under the lenient standards applicable to a FELA case, the Court cannot find for Defendant as a matter of law. To do so would require the Court to make impermissible credibility determinations and also resolve disputed factual issues.[8] Thus, Defendant's Motion for Summary Judgment (Doc. 14) is denied. This case will be scheduled for trial in Macon on February 19, 2013. A pretrial conference will be held on January 22, 2013. Additional information about the pretrial conference will be sent out in the near future.

SO ORDERED, this the 9th day of November, 2012.

s/ Hugh Lawson
HUGH LAWSON, SENIOR JUDGE

mbh

---

[8] As noted in the facts section, Plaintiff also contends he was not properly trained in how to clean the filters and that the yard terrain may have contributed to his injury. Neither of those topics is fully addressed in the summary judgment motion, which is focused on the maintenance issue. In any event, resolution of those issues would also require the Court to make factual determinations that are not appropriate on summary judgment. Thus, those claims will also move forward to trial.